STATE v. LILES.

(Filed April 19, 1904).

1. BASTARDY—*Civil Action—The Code, secs. 32, 2967.*
    A proceeding in bastardy is a civil action and not a criminal prosecution. *State v. Ostwalt*, 118 N. C., 1208, and *State v. Ballard*, 122 N. C., 1024, *overruled* on this point.

2. BASTARDY—*Husband and Wife.*

    In a bastardy proceeding the legitimacy of a child born of a married woman is an issue of fact depending on proof of the impotency or nonaccess of the husband.

INDICTMENT against Lester Liles, heard by *Judge H. R. Bryan* and a jury, at January Term, 1904, of the Superior Court of UNION County. From a verdict of guilty, and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General, Adams, Jerome & Armfield,* for the State.
*Redwine & Stack* and *Williams & Lemmond,* for the defendant.

CLARK, C. J. This is a proceeding in bastardy. The prosecutrix was a married woman at the time of the birth of the child, which was born four or five months after mar-

riage. The Court charged the jury that "this is a criminal action and the offense is completed when the child is begotten." To this the defendant excepted. The object of the proceeding as stated in The Code, section 32, is to require the mother, if she shall refuse to declare the father, to "give bond payable to the State with sufficient surety to keep such child or children from being chargeable to the county," and if she shall accuse any man with being the father, if he admit the charge, or, denying it, shall be found to be the father of such child, he shall give bond with sufficient surety to indemnify the county from charges for the maintenance of such child, with a provision that from the judgment "the affiant, the woman or the defendant, may appeal to the next term of the Superior Court of the county where the trial is to be had *de novo.*"

The law as to proceedings in bastardy first appears in the Laws of North Carolina, 1741, chapter 14, section 10, and may be found at p. 174 of volume 23, State Records, in which volume the laws still extant from 1666 to 1791 are collected and reprinted. Some slight changes were made in 1799, chapter 531, section 2, and other statutes mentioned in the heading to section 32 of the present Code (of 1883). The statute is also codified in Revised Statutes, chapter 12, section 1, and Revised Code, chapter 12, section 1. Clearly the object of the statute is in no sense criminal, but is expressed on its face to be a fiscal regulation to compel the mother or (if the father was declared by her and proved to be such) the father to give sufficient surety "to keep such child from being chargeable to the County" for its maintenance. Accordingly, we find that in an unbroken line of decisions down to and including *State v. Edwards,* 110 N. C., 511 (1892), in which the authorities are collected, and which was an unanimous opinion, it is held that the proceeding, though it has some

anomalous features, was civil in its nature and not even
*quasi* criminal, citing with approval, among other cases,
*State v. Higgins,* 72 N. C., 226, to that effect.   Among the
long line of cases holding that the proceeding was civil in
all essential features, are, besides *State v. Edwards, supra,*
the following: *State v. Peebles,* 108 N. C., 768; *State v.
Crouse,* 86 N. C., 617; *State v. Bryan,* 83 N. C., 611;
*State v. Wilkie,* 85 N. C., 513 (all of these being cases sub-
sequent to the Act of 1879); *State v. Hickerson,* 72 N. C.,
421; *State v. McIntosh,* 64 N. C., 607; *State v. Waldrop,*
63 N. C., 507; *Ward v. Bell,* 52 N. C., 79; *State v. Thomp-
son,* 48 N. C., 365; *Adams v. Pate,* 47 N. C., 14; *State v.
Brown,* 46 N. C., 129; *State v. Pate,* 44 N. C., 244; *State v.
Carson,* 19 N. C., 368, and "there are others."   All these
were unanimous opinions, and the point was presented.   In
*State v. Pate,* 44 N. C., 244, *Pearson, J.,* calls attention to
the fact that this proceeding was not begun by presentment
or indictment and could not be criminal in its nature.   In
*Myers v. Stafford,* 114 N. C., 234 (1894), it was held for
the first time and by a divided Court (dissenting opinion
on page 689) that bastardy was a misdemeanor, the dissent
calling attention to the fact that if it was a crime, and not a
police regulation as theretofore held, then the woman must
be equally guilty.   This case was followed by *State v. Ost-
walt,* 118 N. C., 1208 (1896), 32 L. R. A., 396, and *State
v. Ballard,* 122 N. C., 1024 (1898), both by a divided Court,
two Judges dissenting each time.   These cases have not been
affirmed since, and indeed seem to have been questioned in
*State v. Pierce,* 123 N. C., 748.   The result of these cases,
all by a divided Court, has been practically to destroy almost
entirely the efficacy of the proceeding by requiring proof be-
yond a reasonable doubt, a disparity of challenges, a denial
of appeal by the woman or the State, and of the competency
of the woman's affidavit (though all these are expressly given

in the statute), and by exacting other incidents of a criminal trial.    We feel impelled, as the point is now presented for the first time since *State v. Ballard, supra,* to review these latter cases and give some of the reasons why we cannot sustain them as authority.    The above three cases were followed by two or three others of like purport in which the point was not discussed, as it was not deemed necessary to reiterate the dissent.    The cases named were put on the ground that the Act of 1879, incorporated into The Code, section 35 (not section 32), a provision that if the issue of paternity shall be found against the father there should be, in addition to the bond for maintenance and the allowance to the woman, a fine of ten dollars imposed upon the father for the benefit of the school fund.    But this contention overlooked the fact that in the very section 32 there was and had been, since its first enactment in 1741, a provision that if the woman should not declare the father she should give the bond to prevent the child from being chargeable on the county and "shall pay a fine," which the statute of 1799 made "five dollars," at which it still stands.    Yet during all these years the proceeding had been held a civil remedy.    If the fine of five dollars against the woman in the same section did not make the proceeding a criminal action, the fine of ten dollars laid in a different section upon the man could not have that effect. Furthermore, three opinions by unanimous courts subsequent to the Act of 1879 (which imposed the fine of ten dollars) held that this provision did not have the effect to change the proceeding into a criminal action.    One of these only (*State v. Crouse,* 86 N. C., 617) was called to the attention of the Court, and though that case was in point, the other two by some oversight were not called to the eye of the Court in either of the three cases (*Myers v. Stafford, State v. Ostwalt* and *State v. Ballard*), in which the majority of the Court held that the action had been changed into one to punish a

misdemeanor. Had the· other two cases to same effect as
*State v. Crouse* been then called to the attention of the Court,
doubtless they would have been followed.

In óne of these, *State v. Giles,* 103 N. C., at p. 396,
*Smith, C. J.,* speaking for a unanimous Court, says: "The
· remaining exception is to the judgment itself as inconsist-
ent with the Constitution, though following the statute, in
that it imposes upon the defendant the payment of fifty dol-
lars for the use of the woman and a *fine of ten dollars be-
sides,* and imprisons for an indefinite period in case of a de-
fault in making payment. The fine is *quasi* penal but the
payment of the residue is not, and the proceeding is not in
the exercise of a *criminal* but of a *civil* jurisdiction in pro-
viding for the present support of the child and an indemnity
to the county in case of its becoming a further public charge.
\* \* \* The error in this contention consists in regarding
the requirement of the payment of these amounts and· an
enforcement of imprisonment as an award of punishment
for a criminal offense, which *in no sense they are,* unless
the ten-dollar fine may be so considered. It is but the exer-
cise of a power to compel obedience to the order of the Court,
and an imprisonment from which the party may be relieved
under the insolvent law, as if committed for fine and costs
in a criminal prosecution. The Code, section 2967; *State
v. Davis,* 82 N. C., 610; *State v. Bryan,* 83 N. C., 611."
This was followed in *State v. Edwards,* 110 N. C., 511,
in which (at p. 512) it is said that though "a fine is im-
posed by the statute" the action remains a civil proceeding.
Although this case was cited in *State v. Ostwall* and *State
v. Ballard,* this direct ruling on the point was overlooked.
The true principle applicable is thus stated by *Ruffin, J.,*
in *State v. Snuggs,* 85 N. C., 541 (upon another section of
The Code): "The statute not only creates the offense but
fixes the penalty that attaches to it and *prescribes the method*

*of enforcing it,* and the rule of law is that wherever a statute does this, no other remedy exists than the one expressly given, and no other method of enforcement can be pursued than the one prescribed." This case is cited as authority in *State v. Pierce,* 123 N. C., at p. 748.

Among the reasons why we return to *antiquas vias* is that the cases of *Myers v. Stafford, State v. Ostwalt* and *State v. Ballard* were decided by a divided court upon the effect of the statute of 1879 imposing (in another section) a fine of ten dollars, which it is held *per se* changed the proceeding into a criminal action, whereas three opinions of a unanimous court (two of which were not cited in the three cases just named) had held that the statute of 1879 did not change the nature of the action; further, because section 32 from 1741 had contained a provision for a "fine of five dollars" against the woman, and, notwithstanding this, our unbroken line of decisions had held the proceeding to be civil in its nature; because also, to construe the statute criminal in its nature is contrary to its express provisions which declare its object to be to secure sureties to prevent the child becoming a charge on the county; and that if the action were changed into a criminal proceeding, this might negative appeals by the woman and by the State and the use of the woman's affidavit as presumptive evidence (all of which are given by the statute and are essential to its enforcement), and by further requiring a disparity of challenges and proof beyond a reasonable doubt, and other incidents of a criminal action, which would practically make the statute nugatory, and would also repeal the statute of limitation of three years provided by section 36. We do not think such radical changes can fairly be inferred to have been caused by the incidental authorization in another section of a fine of ten dollars. If the fine cannot be levied as an incident in the civil action, like the fine of $5 upon

the woman authorized by section 32, or the fine of $2,500 authorized to be taxed against a sheriff when judgment is rendered against him on his bond for failure to pay over the taxes in full (*Davenport v. McKee,* 98 N. C., 500), then, under the rule *magis quam valeat quam pereat,* either the fine in section 35 should be held invalid rather than the destruction of the efficacy of the ancient proceeding under section 32, or the $10 fine can be levied in a subsequent and independent criminal proceeding begun under section 35, but based upon the verdict and judgment thereon rendered under the provisions of section 32.

Besides, there being already the criminal action for fornication and adultery, there is no need to abolish this proceeding which was enacted to protect the county against being chargeable with the maintenance of the child. If it were a criminal proceeding it is singular that the woman is not made liable when the man is, for if tried for a criminal offense both are guilty, since she was present aiding and abetting in its commission. In construing statutes the mischief to be remedied must be considered, and there was in this matter no defect of criminal proceeding, for fornication and adultery was already a complete remedy.

The weight of authority elsewhere recognizes bastardy as a civil proceeding to enforce a police regulation. Bishop's Stat. Crimes, section 691; 2 McLain Cr. Law, section 1186; 3 Am. & Eng. Ency. (2 Ed.), 874; 3 Ency. Pl. & Pr., 277, which cites numerous cases to that effect from Arkansas, Connecticut, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Nebraska, New Hampshire, New York, North Carolina, Rhode Island and Vermont, and among the States which hold the proceeding neither strictly civil nor strictly criminal, but *quasi* civil to enforce a police regulation, are cited Alabama, Florida, Michigan, Ohio and Wisconsin. To similar effect is 9

Cyc., 644, which adds to States holding as above, Minnesota, New Jersey, Ohio, Oklahoma, South Dakota, Tennessee and Wisconsin, and sums up the doctrine thus: "The object of these proceedings is not the imposition of a penalty for an immoral or unlawful act, but is merely to compel the putative father to provide for the support of his offspring and thus secure the public against such support."

We are constrained to return to the former uniform rulings of this Court that proceedings in bastardy are essentially civil in their nature, though with some anomalous features. *State v. Edwards,* 110 N. C., 511, and cases there cited. *Myers v. Stafford, State v. Ostwalt* and *State v. Ballard* are overruled as to this point, together with any other cases based on the holding by them that bastardy is a criminal proceeding.

The presumption in bastardy proceedings is that the woman is single. *State v. Peebles,* 108 N. C., 768; *State v. Allison,* 61 N. C., 346. Here it affirmatively appears that the woman was married both when she made the affidavit and when the child was born. But it was held by *Taylor, C. J.,* in *State v. Pettaway,* 10 N. C., 623, and by *Ruffin, C. J.,* in *State v. Wilson,* 32 N. C., 131, cited with approval in *State v. Allison,* 61 N. C., 346, that though the statute specifies "any single woman big with child or delivered of a child," the subsequent language in the section that the object is to protect the public against the charge of maintaining bastard children, includes married women, since a bastard child can be begotten upon a married woman as well as upon a single woman.

Formerly a child born of a married woman was conclusively presumed to be legitimate, but now legitimacy or illegitimacy is an issue of fact resting upon proof of the impotency or non-access of the husband—see *Woodward v. Blue,* 107 N. C., 407, 10 L. R. A., 662, 22 Am. St. Rep.,

897, where the subject is fully discussed and authorities given. This is true even when the child is begotten as well as born in wedlock. For a stronger reason this is true when, as in this case, the child was begotten four or five months before the marriage, and the jury believed the evidence that the husband had no intercourse with the prosecutrix prior to the marriage. The evidence to that effect and to show the paternity of the defendant and his admissions were properly admitted. This disposes of all the other exceptions.

Though there was error in holding the action to be a criminal proceeding, it was harmless error in the view we have taken, and upon the whole case the judgment below is

Affirmed.

DOUGLAS, J. concurs in result only.