W. L. MYERS v. WILLIAM STAFFORD et als.

*Action for Damages—Bastardy Proceedings—Begetting Bastard Child a Misdemeanor—Work on Public Roads.*

1. The begetting of a bastard child, which formerly rendered the defendant amenable only in the civil proceeding, has, by the Act of 1879 (section 35 of *The Code*), become a petty misdemeanor, and the defendant may, under the authority of section 3448 of *The Code*, be put to work on the public roads until the fine and costs are paid.

2. County Commissioners who ordered a defendant in bastardy proceedings who had been committed to jail in default of payment of the allowance, fine and costs, to be put at work on the public roads of the county are not liable therefor in an action for damages by such defendant.

This was a CIVIL ACTION for damages, brought by the plaintiff against the members of the Board of Commissioners of Alamance County, tried before *Brown, J.,* and a jury, at August Term, 1893, of GUILFORD Superior Court.

The plaintiff was, in September, 1890, adjudged guilty in bastardy proceedings by a Justice of the Peace and ordered to pay a fine of ten dollars, the costs of the proceeding and the allowance to the mother of the child. In default of payment he was committed to jail, there to remain until legally discharged. The defendants, on the 6th of October, 1890, passed an order directing the Sheriff of the county to deliver the plaintiff to the superintendent of the county work-house to be worked on the public roads of the county until discharged by law, and the plaintiff was thereupon delivered to the said superintendent and kept in the work-house and worked on the public roads with the other prisoners until the 15th of October, 1890, when, upon a writ of *habeas corpus,* he was returned to the jail and remained until he was discharged.

MYERS *v.* STAFFORD.

Before the jury was impaneled the defendants demurred to the complaint *ore tenus* on the ground that the complaint did not state facts sufficient to constitute a cause of action, in that, upon his own admission, being in the common jail for the non-payment of costs and fees in a bastardy proceeding, the Board of Commissioners had the right to put him in the work-house to work out such costs, and, therefore, the transfer of plaintiff from the common jail to the county work-house was not unlawful.

Defendants' motion was overruled, to which defendants excepted.

The following issues were submitted:

" 1. Did defendants unlawfully and wrongfully commit the plaintiff to the work-house of Alamance county and wrongfully detain him there and work him upon the public roads of said county, as alleged in the complaint?

" 2. What damage has plaintiff sustained?"

At the close of the testimony defendants asked the Court to instruct the jury to find the first issue in the negative, which the Court refused, and directed the jury, as a matter of law, that the answer to the first issue should be Yes; and the jury so found. And in response to the second issue the jury assessed plaintiff's damages at four hundred dollars.

On the return of the verdict defendants moved for a new trial, which was refused, and from the judgment for plaintiff defendants appealed.

*Messrs. L. M. Scott, J. T. Morehead* and *J. A. Barringer,* for plaintiff.

*Messrs. J. A. Long* and *J. E. Boyd,* for defendants (appellants).

MACRAE, J.: We have held in the plaintiff's appeal that this appeal was prematurely perfected, pending an agree-

ment that a motion to set aside the judgment and the finding upon the second issue might be heard at December Term. His Honor at said term having heard the motion and set aside the judgment and the finding upon the second issue, the case now stands for trial in the Superior Court upon the said issue, and the exceptions taken upon the former trial, as to the first issue, having been saved and reserved would be heard by this Court should there be another appeal. But as the matter was fully argued here upon the question involved in the first issue, we deem it proper to express the opinion of the Court at this time in order to bring the litigation to a speedier close.

The question is whether the defendants had any power or authority in law to work upon the public roads, along with convicts, a person who had been committed to jail by a Justice of the Peace in default of payment of fine and costs in a bastardy proceeding. The plaintiff's counsel contend :

1. That there is no statute authorizing confinement with labor, except where parties have been convicted of crime.

2. That no person convicted of crime can be put to labor unless by *order* of the Court passing the sentence.

3. The plaintiff was convicted of no crime.

4. That there was no sentence to labor, and if there had been it would have been in violation of Art. 1, section 33 of the State Constitution, and of Art. 13, section 1 of the Federal Constitution.

The commitment is as follows :

" Whereas Walter L. Myers, the prisoner herewith sent you, has this day been convicted before me, an acting Justice of the Peace for Boon Station township in said county, on the charge of bastardy, and sentenced for a fine of ten dollars for State and to forty dollars for mother of child

and four dollars and fifty-five cents costs—total, $64.55:
You are therefore commanded to receive the said Walter L.
Myers into the common jail of the county of Alamance,
there to remain until the expiration of the time aforesaid,
and that he shall remain in prison until the costs and fine
are paid, or he shall otherwise be discharged according to
law.         ·         ·                         H. F. TICKLE,
                              *"Justice of the Peace.*

" I suggest to the Board of County Commissioners to put
said Myers on public roads of said county until said fines
and cost are paid."

Thereupon plaintiff was turned over to the manager of
the work-house by the County Commissioners and worked
upon the county roads.

The contention of defendants was that it was their duty
to put the plaintiff to work on the roads in order to indem-
nify the county against loss for jail fees, etc.  Under the
provisions of chapter 355 of the Acts of 1887, as amended
by chapter 419 of the Acts of 1889, the only provis-
ions of these acts which could in any view apply to this
case are those contained in section 1 of the Act of 1887 and
the amendment thereof in that of 1889: "That when any
county has made provision for the working of convicts upon
the public roads, or when any number of counties have
jointly made provision for working convicts upon public
roads, it shall be lawful for and the duty of the Judge hold-
ing court in such counties to sentence to imprisonment and
hard labor on the public roads for such terms as are now
prescribed by law for their imprisonment in the county
jails or in the State prison the following classes of convicts:
First, all persons convicted of offences the punishment
whereof would otherwise wholly or in part be imprisonment
in the Penitentiary for a term not exceeding ten years."

"In such counties there may also be worked on the public roads in like manner all persons sentenced to imprisonment in jail by any magistrate, and also all insolvents who shall be imprisoned by any Court in said counties for non-payment of costs in criminal causes may be retained in imprisonment and worked on the public roads until they shall have repaid the county to the extent of half fees charged up against the county for each person taking the insolvent oath." (The balance of the section is not material to our present inquiry).

The first paragraph quoted above is the Act of 1887, and refers exclusively to persons sentenced by the *Judge* holding the courts of the county. The second paragraph is the amendment of 1889, and the only part thereof which by any construction could be made applicable to our present case, is: "There may also be worked on the public roads in like manner all persons sentenced to imprisonment in jail by any magistrate.". The defendant was sentenced to pay a fine and an allowance and costs, and was committed to jail until the fine and costs were paid.

Now, we are construing a penal statute; the sentence is to pay the fine and allowance and costs; the incident is that he shall be kept in prison until the fine, etc., are paid or until defendant is discharged according to law. In some cases there may be fine *and* imprisonment imposed as a punishment for crime. But to say the least it is very doubtful whether, under this section, the defendant may be put to work upon the public roads, especially before he has taken the insolvent's oath.

It is contended further that under section 38 of *The Code*, where it is provided that "when the putative father shall be charged with costs or the payment of money for the support of a bastard child, and such putative father shall by law be subject to be committed to prison in default

of paying the same, it shall be competent for the Court to sentence such putative father to the house of correction," etc.   By section 4 of Art. 11 of the Constitution, "The General Assembly may provide for the erection of houses of correction, where vagrants and persons guilty of misdemeanor shall be restrained and usefully employed." This section has never been executed by appropriate legislation.   So there is no house of correction in which the defendant could be confined, and by no process can we conclude that labor on the public roads is equivalent to imprisonment in the house of correction.

But we find that section 3448 of *The Code* provides that "the Boards of Commissioners of the several counties within their respective jurisdictions, or such other county authority therein as may be established,  *   *   *   shall have power to provide under such rules and regulations as they may deem best for the employment on the public streets, public highways, public works, or other labor for individuals or corporations, of all persons imprisoned in the jails of their respective counties, cities and towns, upon conviction of any crime or misdemeanor, or who may be committed to jail for failure to enter into bond for keeping the peace or for good behavior, and who fail to pay all the costs, or to give good and sufficient security therefor, provided," etc. (The balance is not pertinent).

Was the plaintiff, then, imprisoned in the county jail of Alamance upon conviction of a misdemeanor, and did he fail to pay all the costs he was adjudged to pay?   The issue of paternity usually submitted to the jury is substantially this: Is the defendant the father of the child?   The answer is yes or no.   Before the Act of 1879, which authorized the imposition of a fine and thereby distinguished the proceeding in North Carolina from that in any other State, as far as we have ascertained, it was a civil action, with

some anomalous features, the object of which was to save harmless the county from the expense of caring for the bastard child; and although it was sometimes called a quasi-criminal action it was distinctly recognized as a civil proceeding in which provision was made for the enforcement of a police regulation. On the passage of the Act of 1879 its nature was changed in a very important particular, for upon the finding of the issue of paternity against defendant he was to be fined by the Judge or Justice not exceeding ten dollars in addition to the allowance to be made for the use of the woman, for the payment of which he was required to give bond, etc., and "in default of such payment he shall be committed to prison." Section 38 permitted the Court to sentence the putative father to the house of correction for such time not exceeding twelve months, etc., but as we have said this section is inoperative by reason that we have no house of correction, therefore the jurisdiction of the Justice of the Peace is not disturbed.

The effect of the Act of 1879 has been carefully considered by Justices AVERY and CLARK, in *State* v. *Burton*, 113 N. C., 655, where the former, speaking for himself, concludes that by force of the act requiring the imposition of a fine the nature of the action became criminal, and the latter expressed a different opinion. In their opinions the cases on the subject are fully cited. The question now being presented in such a shape that it is necessary to be decided, we are of the opinion that the begetting of a bastard child, which formerly rendered the defendant amenable only in the civil proceeding, has by reason of the Act of 1879, *The Code* §35, become a petty misdemeanor. It was demonstrated in *State* v. *Burton, supra,* that a fine can only be imposed by the Court for a crime or misdemeanor or a contempt. Having been adjudged the father of the bastard child, the Justice imposed a fine under the last statute

and required him to pay the costs, etc., and committed him to jail in default.    The defendant had been convicted of a misdemeanor, and by virtue of section 3448 might be put to work, not farmed out, until the fine and costs were paid or he was otherwise discharged according to law, and the defendants rightfully provided for his being so worked and cannot be held liable to him for such action.    This action is not in conflict with the constitutional provisions as insisted by plaintiff, as we have held the defendant to have been found guilty of a misdemeanor; the right of trial by jury is not taken away; the provision that either party may appeal, as will be seen by reference to section 32 of *The Code*, applies to the affiant, the woman or the defendant, and so does not conflict with the general rule that the State may not appeal from a judgment upon a verdict of not guilty; and the provision that the examination of the woman shall be presumptive evidence of the truth of the charge is simply shifting the burden of proof as in the case of an indictment for an escape.    In this view, while the appeal is to be dismissed as prematurely taken, we have thus indicated our opinion upon the merits in order that the plaintiff may be so advised.

Appeal Dismissed.