STATE AND MAGGIE CHURCH v. M. A. PARSONS.

*Bastardy Proceedings—Payment of Allowance—Fine and Costs— Enforcement of Payment—Discharge of Insolvent—Objection to Insolvent's Discharge—Exceptions.*

1. The legal obligation of a defendant in bastardy proceedings to pay the allowance to the mother, provided for under section 35 of *The Code*, is not less a duty imposed by the State, as distinguished from a debt arising under a contract, because the allowance is now required to be paid directly to the mother instead, of to the Clerk of the Court as formerly.

2. A mother of a bastard child, to whom an allowance has been made in bastardy proceedings, is such a creditor of the father of her child, as to permit her to oppose the insolvent's discharge, by suggesting fraud in answer to his petition, as provided in section 2948 of *The Code.*

3. One who has been found to be the father of a bastard child, and committed for nonpayment of the fines, costs and allowance, is entitled, under section 2967 of *The Code,* to be discharged from prison upon filing his petition for a discharge as an insolvent, and complying with the requirements of law.

4. When defendant in bastardy proceedings has been ordered to pay a fine and costs, and allowance to the mother, under section 35 of *The Code,* only the State can suggest fraud as to the fine and costs, in answer to defendant's petition for discharge, filed under section 2942 of *The Code;* as to the allowance, the mother of the child has the right to suggest fraud, and upon such suggestion, an issue is raised, which should be entered upon the trial docket of the Superior Court, and stand for trial as other causes.

5. In such case, the Judge of the Superior Court has no power to make, at chambers, in a county other than that where the issue is pending, any order prejudicial to the mother's rights or interest, without her consent.

6. The father of a bastard child, who has been ordered to pay an allowance to the mother, is not entitled to the constitutional exemption of $500, as against such debt due the mother.

This was an issue in bastardy proceedings, tried before *Whitaker, J.,* and a jury, at March Term, 1894, of Wilkes

STATE *v.* PARSONS.

Superior Court. The defendant was found guilty, and ordered to pay a fine of $10 to the State, and an allowance of $35 to the prosecutrix, and costs of the action. Upon defendant being unable to pay said fine, allowance and costs, he was committed to the common jail of Wilkes County. The defendant remained in jail the time required by law, and, upon a proper motion to the Sheriff to that effect, filed his petition before M. McNeill, Clerk of the Superior Court, to be allowed to take the oath of insolvency, as prescribed by law. In accordance therewith, defendant was produced before the Clerk on the 9th day of April, 1894, and asked, by his petition, to be allowed to take the oath and be discharged. The Chairman of the Board of Commissioners, nor any officer interested in the fee-bill taxed against the defendant, made any opposition to his taking the oath, neither verbally nor in writing, but the prosecutrix filed an answer to the petition, alleging that he was worth more than $50, and asking that he be not allowed to take the oath and be discharged. An affidavit, in support of this view of the case, was filed by John Welborn, who was not the Chairman of the Board of County Commissioners, nor an officer interested in the fee-bill. It was admitted by the attorneys for the prosecutrix that defendant was worth less than $500. The Clerk held that issues were raised, refused to administer the oath, and remanded the defendant to jail. Defendant appealed to Spier Whitaker, Judge, holding the Courts of the District. The appeal was granted, to be heard at chambers. Counsel for the prosecutrix did not give the Judge any notice nor information, in writing or otherwise, that they desired to be heard on this appeal. On April 11, 1894, the matter was heard at chambers before *Whitaker, J.* The ruling of the Clerk was reversed, and the defendant ordered to be discharged on taking the prescribed oath. From this order the prosecutrix appealed.

*The Attorney General,* for the State.
No counsel, *contra.*

AVERY, J.: The judgment in the original bastardy proceeding was that the defendant pay a fine of ten dollars, an allowance to the mother of the bastard child, and costs, in accordance with the provisions of section 35 of *The Code.* Prior to the enactment of section 2, chapter 92, Laws 1879, which was brought forward in the section of *The Code* referred to, the law (Bat. Rev., ch. 9, sec. 4; Rev. Code, ch. 12, sec. 4) had provided that on the finding of an issue of bastardy against him, the putative father should " stand charged with the maintenance thereof, as the Court may order." In *State* v. *Cannady,* 78 N. C., 539, it was held that the judgment for the fine and costs was not a debt, but both were imposed in the exercise of the police power, in order to provide for the child. *State* v. *Manuel,* 4 Dev. & Bat., 20.

In a later case, *State* v. *Burton,* 113 N. C., 655, approved in *Myers* v. *Stafford,* 114 N. C., 234, it was held that the fine imposed by the Act of 1879 made the proceeding in bastardy a criminal action, but with the provision that upon conviction, an allowance might be imposed as a police regulation, as well as the fine by way of punishment for the criminal offence. The common practice (under the Act of 1814, ch. 12, sec. 4 Rev. Stat.; ch. 9, sec. 4, Bat. Rev.) when the defendant, upon the finding of the issue against him, stood charged, etc., was to impose an allowance of $60, to be paid either in bulk or in installments into Court, and by the Clerk to the mother for the maintenance of the bastard. While the law, where the allowance is paid without objection or resistance, operates as did the practice under the former statute, its language is materially different, in that it fixes definitely the sum to be paid, and in that the payment is made by the Clerk to the mother, in obedience to the terms of the statute itself, and not in accordance with the order of the

Court, as was formerly the usual course. But the legal obligation on the part of a defendant in a bastardy proceeding is not the less a duty imposed by the State as distinguished from a debt arising out of contract, because the allowance is now paid, under the terms of the law, directly to the woman instead of to the Clerk, to be disbursed by him, under the order of the Court, to her as the natural guardian of the child.

On the other hand, a creditor is " one to whom money is due " (Webster's Dictionary), and a mother to whom an allowance has already been declared due and payable, is not taken out of the definition because the money must pass into her hands with a moral trust or obligation to apply it for the maintenance of the bastard. If she was a creditor and he was her debtor, then unquestionably she had the right to file an affidavit suggesting fraud, under section 2948 of *The Code,* in answer to his petition, and to demand that an issue of fraud should be framed for trial in the Superior Court, under section 2947. The subsequent section, 2967, in which the putative father of a bastard, and " every person committed for fine and costs of any criminal prosecution," are declared entitled to be discharged from prison " upon complying with this chapter," was manifestly intended to be construed as permitting a defendant convicted in a criminal proceeding, or found to be the father of a bastard child (the proceeding in bastardy being, when that act was passed, Laws 1868–'69, ch. 162, sec. 26, one entered on the civil instead of the criminal side of the docket), to file a petition before the Clerk designating the time when he wished to apply for discharge. The petitioner under that section, prior to the passage of the Act of 1879, owed the duty to the State to pay fine, costs and allowance, but was not a debtor, and, therefore, was entitled, as a matter of right, to be discharged upon filing his petition and showing himself to be an insolvent, within the legal import of the term, from all obligation

to pay the allowance, as well as fine and cost. When, however, the Act of 1879 gave rise to the relation of creditor and debtor between the convicted father and the mother of the bastard, the result was that, as to the fine and costs in the newly created criminal action, the petitioner could claim his discharge without question or interference on the part of any person not representing the state in an official capacity, but as to the allowance, which became a debt *eo instanti*, that the order of the Court declared it due and payable to the mother, the defendant, like any other debtor, might be compelled to meet a suggestion of fraud preliminary to the granting of an order releasing him. The defendant here was entitled to an order of discharge as to the fine and costs, with which the mother had no concern, but not as to the allowance due her, except in the way provided for all other debtors. Upon the filing of her affidavit an issue, was raised—*The Code*, section *2949*—which should have been entered upon the " trial docket of the Superior Court " and allowed to " stand for trial as other causes." Obviously, the Judge could not order his discharge as to the allowance to the mother when the issue was still pending, and the defendant's right to demand release as to that debt to her was dependent upon the finding of the jury thereon, nor if the law recognized the mother of the bastard as a party, was he empowered, without her assent, to his hearing the motion then and there, to make at chambers, and in a county other than that where the issue was awaiting trial, any order prejudicial to her rights or interest. *Bynum* v. *Powe*, 97 N. C., 374. Had the motion for discharge been made at a regular term of the Court when the complainant was or had constructive notice to be present, action upon it must have been postponed till after the trial of the issue.

It will be conceded that the fine and imprisonment do not constitute a debt, and that it is competent for the Legislature to fix the limit of exemption when prisoners are held in

default of payment of the one or the other, either at $500, or a smaller sum. *State* v. *Davis,* 82 N. C., 610; *State* v. *Burton, supra.* The act of 1881 amended the oath prescribed for insolvents by the Act of 1869, (Bat. Rev. ch. 62, sec. 31) and which was construed in *State* v. *Davis, supra,* by inserting " $50," as the allowance over and above " such an exemption as may be allotted by law." But by section 2972 of *The Code,* an oath that the defendant was not worth $50, " in any worldly substance in debts, money or otherwise " (not above exemptions) was required in all cases. In Burton's case, *supra,* this oath was administered to the defendant, and it seems to be settled that as to the discharge from imprisonment for fine and costs it was in the purview of the legislative power to so limit the exemption to the sum of fifty dollars where the application is for discharge from imprisonment for non-payment of fine and costs. But it may have been contended, and doubtless was, on the hearing below, that if the allowance was not a debt due to the mother, only the Chairman of the Board of County Commissioners or some officer interested in the fee bill (under section 2973) could suggest fraud and raise an issue, while if she was a creditor the defendant was entitled to an exemption of five hundred dollars by virtue of the Constitution. We concede the soundness of the former but not of the latter of the two propositions stated. The allowance is a debt due to the mother in the sense that in accordance with the provisions of the statute the Court has ordered it to be paid to her to be used for the maintenance of the bastard. The money intended for the support of the child might have been made payable to the overseer of the poor as the disbursing agent of the county and of the State, for which the county is but an agency, and he would thus have become a creditor in his official capacity in the sense that the mother is, but the State would not have abdicated its right to enforce the payment of a sum exacted by its order from the defendant under its

civil jurisdiction in providing for the present support of the child. *State* v. *Giles*, 103 N. C., 396. The Chairman of the Board of County Commissioners has the power in such cases to object to releasing a prisoner from the payment of fine and costs, and to raise an issue of fraud, and the mother may make similar suggestions on oath in reference to the allowance, but still the Court " in the exercise of a power to compel obedience" to its own orders (*State* v. *Giles*, *supra*) might have imprisoned the defendant in the county jail for a definite and reasonable time. and under the express authority of section 38 of *The Code*, the defendant might have been sentenced to the workhouse for a term not exceeding one year. *State* v. *Burton*, *supra*. The defendant, as there was no issue made by the Chairman of the Board of County Commissioners, or by any officer claiming a fee, could rightfully claim to be released from prison on account of the fine and costs, and but for the suggestion of the mother it would have been the duty of the Clerk to discharge him. *State* v. *Burton*, *supra*. In making any order at chambers, when the issue stood for trial, without consent, and especially in ordering the Clerk to release the defendant on his taking the oath prescribed, there was error. Let this opinion be certified, to the end that the issue raised by the affidavit may be tried in the Superior Court of Wilkes County.

Judgment Reversed.